**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No.  96-3792

_____

James Moschetti,                              *
                                             *
          Appellant,                         *
                                             *  Appeal from the United States
     v.                                      *  District Court for the
                                             *  District of Northern Iowa.
Chicago, Central & Pacific                   *
Railroad Company,                            *
                                             *
          Appellee.                          *


_____

Submitted: June 11, 1997
Filed: July 11, 1997

_____

Before MURPHY, HEANEY, and JOHN R. GIBSON, Circuit Judges.

_____

MURPHY, Circuit Judge.

     James Moschetti sued his former employer, Chicago, Central & Pacific Railroad Co. (CCP), for retaliatory dismissal in violation of Title VII, 42 U.S.C. § 2000e et seq. (1997), and the Iowa Human Rights Act, Iowa Code § 216, et seq. (1997), for his support of an African American employee. The district court granted summary judgment to CCP because it accepted the company's articulated non-discriminatory business reason for his termination without squarely considering  whether it was the real reason or a pretextual explanation for intentional discrimination.  We reverse and remand.

In December 1992, Moschetti was working as CCP's Chief Mechanical Officer when he hired Emmitt Forte, an African American, to work under him as a manager. Subsequently Moschetti complained to his direct supervisors on numerous occasions about what he perceived to be unfair and racially motivated treatment of Forte. For example, Moschetti told his supervisors he did not think they adequately handled incidents near Forte's office involving a fake bomb and racially derogatory graffiti. Moschetti also repeatedly sided with Forte when he had disputes with other employees. When Moschetti demoted a white worker named Jay Claus in May 1993, one supervisor told him that he could not believe he had demoted Claus while retaining that "black bastard."

Shortly after this last incident, in June of 1993, Moschetti's responsibilities were substantially curtailed. CCP states this demotion was because Moschetti failed to adhere to departmental budgets, traveled excessively, made decisions which led to labor difficulties, and was not completely candid about his interest in a job opening with another employer. Moschetti alleges his demotion was part of the retaliation he suffered for his support of Forte.

Forte was dismissed in August of 1993 and later filed a race discrimination claim against CCP.[1] After Forte was dismissed, Moschetti wrote a positive letter of

---

[1]CCP asked Moschetti to provide a sworn statement as part of its own internal investigation of Forte's claim. Moschetti said in his statement that he believed Forte was a good employee and that racial discrimination had nothing to do with his discharge; he also denied ever hearing his supervisor make a racially derogatory statement.

In his deposition in this case Moschetti claimed that he had lied in his CCP statement because he was concerned at the time about keeping his job. He now says that CCP discriminated against Forte, that Forte's dismissal was based on race, and that he was terminated because of his support for Forte.

-2-

recommendation for him. Moschetti claims that his supervisors expressed their displeasure to him when they learned of this letter.

In 1990-92 and again in 1994, CCP was responsible for the improper release of oil from two of its railyards. The clean up costs for CCP were approximately $35,000. CCP contends that Moschetti was primarily responsible for monitoring the systems that failed in each spill, that he did not fulfill this responsibility adequately, and that he failed to communicate with engineering staff to determine if the systems were functioning properly. CCP states that Moschetti was not disciplined for the first spill, but that the second spill (known as the Virden Creek spill), combined with the earlier problems which had led to his demotion, resulted in his discharge in October 1994.

Moschetti contends that his discharge was based on his support of Forte. He disputes whether his department was primarily responsible for the Virden Creek spill and the extent of his knowledge about the systems that failed. He also argues that he took appropriate steps to monitor the oil systems and that other employees had not been terminated after even more egregious accidents.

Under Title VII an employer is prohibited from discriminating against an employee who has "opposed any practice made an unlawful employment practice" by the statute, or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute.[2] 42 U.S.C. § 2000e-3(a) (1997). The order and allocation of the burden of proof in this type of case is laid out in <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1981).

> At the first stage, the plaintiff bears the initial burden of establishing a prima

---

[2]The analysis for both the federal and state claims is the same under Iowa law. <u>See</u> Iowa Code § 216.6 (1997); <u>see e.g.</u>, <u>Hulme v. Barrett</u>, 480 N.W.2d 40, 42 (Iowa 1992); <u>Naylor v. Georgia-Pacific Corp.</u>, 875 F.Supp. 564 (N.D. Iowa 1995).

facie case of discrimination.  The prima facie case, in the absence of an explanation from the employer, creates a presumption that the employer unlawfully discriminated against the employee.  If the plaintiff establishes a prima facie case, the burden of production shifts at the second stage to the defendant, who must articulate some legitimate, nondiscriminatory reason for the adverse employment action.  If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops from the case.  The burden then shifts back at the third and final stage to the plaintiff, who is given the opportunity to show that the employer's proffered reason was merely a pretext for discrimination. The plaintiff retains at all times the ultimate burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination.

Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996) (citations omitted); see also, Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir.)(en banc), cert. denied, 1997 WL 181004 (1997).  The key inquiry is whether Moschetti has presented evidence sufficient to create a genuine issue of fact as to whether his employer intentionally discriminated against him in violation of Title VII.  Rothmeier, 85 F.3d at 1337.  Our review of a summary judgment is de novo.  Michalski v. Bank of Am. Ariz., 66 F.3d 993, 995 (8th Cir. 1995).

After the district court concluded Moschetti had presented sufficient evidence of a prima facie case, it considered whether CCP had articulated a legitimate, non-discriminatory reason for its decision to fire Moschetti. The reason given by CCP was that Moschetti had been fired for his involvement in the Virden Creek oil spill and for other instances of poor performance.  In response the court stated that "courts will not second guess employer's business decisions when determining whether the reason given for the termination was a pretext for discrimination," citing Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995).  It declined to "second guess" the articulated neutral business reason and granted summary judgment to the employer.

Hutson should not be read to mean that once an employer has articulated a

-4-

legitimate and non-discriminatory reason for its actions, that reason must be accepted without question.  The third stage of the <u>McDonnell Douglas</u> burden shifting scheme requires consideration of whether the proffered reason was in fact the real reason the employer acted or if it was really a pretextual explanation for intentional discrimination.  See <u>Gaworski v. ITT Comm. Fin. Corp.</u>, 17 F.3d 1104, 1110 (8th Cir. 1994)(materially conflicting evidence raises question of fact about the believability, not the propriety, of the proffered explanation).  The district court erred in not completing the required analysis.

Although the district court recognized that Moschetti had presented evidence of pretext, it did not complete the analysis required by the third stage of the <u>McDonnell Douglas</u> burden shifting scheme.  Rather, it went on to say:

> The Court will not second guess CCP's business decision to retain or terminate employees responsible for property damage or environmental disasters.  Whether the Virden Creek spill was as damaging to CCP as the other incidents and whether Plaintiff's involvement in two spills is justification for his termination are issues for CCP to determine, not the Court.

We agree with the district court that the question at this stage is not whether the employer's explanation was a good or bad business reason.  The reason proffered by CCP was non-discriminatory on its face, satisfying its burden of production under the second stage of <u>McDonnell Douglas</u>.  The question at this stage is whether Moschetti presented enough evidence to allow a reasonable fact finder to infer that intentional discrimination, rather than the proffered explanation, was the real reason for his termination.  <u>Rothmeier</u>, 85 F.3d at 1336-37; <u>see also</u>, <u>Ryther</u>, 108 F.3d at 836-38.  The district court did not squarely reach the question of whether Moschetti has met this burden so it erred in granting summary judgment to CCP.

The judgment is reversed, and the case is remanded for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.