# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————————

No. 97-4215EM

———————————

| | |
|---|---|
| Anne Newton, | * |
| | * |
| Appellant, | * |
| | * |
| | *    Appeal from the United States |
| v. | *    District Court for the Eastern |
| | *    District of Missouri. |
| Cadwell Laboratories, | * |
| | * |
| Appellee. | * |

———————————

Submitted:  September 24, 1998
Filed:  September 30, 1998

———————————

Before McMILLIAN, HEANEY, and FAGG, Circuit Judges.

———————————

FAGG, Circuit Judge.

Anne Newton appeals the district court's grant of Cadwell Laboratories' (Cadwell) motion for summary judgment on Newton's gender discrimination and sexual harassment claims.  We affirm the district court on Newton's gender discrimination claim and reverse the district court and remand for further proceedings on Newton's sexual harassment claim.

On appeal, we review the district court's grant of summary judgment de novo and affirm when the record presents no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law.  See Cram v. Lamson & Sessions Co., 49 F.3d 466, 471 (8th Cir. 1995).  We resolve all factual disputes and draw all inferences in favor of Newton, the nonmoving party in this case.  See id.

Cadwell employed Newton as a salesperson.  Shortly after Newton started working at Cadwell, Newton had a consensual affair with her supervisor, Robert Love, that ended approximately three years before Newton was terminated.  After the affair ended, Love continued to pursue Newton, making it clear to Newton in a variety of ways that he wished to renew their relationship.  Newton testified Love forced her to participate in a sexual act against her will on one occasion shortly after their affair ended; continually "hovered" around her; wanted to know about her travel schedule because, Newton believed, Love wanted to intercept her on business trips; maneuvered to sit with Newton at company meetings; and could not reach an agreement with another supervisor to allow Newton to transfer from Love's supervision.  Love's amorous-like behavior ceased in September 1992 when Love's wife began working as a salesperson for Cadwell.

In the years following the cessation of the affair, Newton's sales decreased.  In January 1993, Love gave Newton an overall favorable evaluation but noted his concern about Newton's low sales numbers and Newton's need to better cover her sales territory.  After two consecutive quarters with sales so low Newton was ranked at the bottom of Cadwell's sales force, Cadwell placed Newton on probation during the second quarter of 1993.  When Newton failed to meet the terms of her probation, Cadwell discharged her.  Love sat on the management committee that made the decision to place Newton on probation and to terminate her employment.

Newton sued Cadwell, contending Cadwell discriminated against Newton because of her gender and Love subjected Newton to quid pro quo sexual harassment. The district court granted Cadwell's motion for summary judgment, reasoning Newton failed to establish a prima facie case of gender discrimination and failed to show

Cadwell's legitimate, nondiscriminatory reason for Newton's discharge was pretextual. The district court also reasoned Newton failed to establish a prima facie case of quid pro quo sexual harassment.

Newton first contends the district court committed error in holding Newton failed to show either a prima facie case of gender discrimination or pretext. After an employee establishes a prima facie case of gender discrimination, the employer must then advance a legitimate, nondiscriminatory reason for the employee's discharge. See Johnson v. Baptist Med. Ctr., 97 F.3d 1070, 1072 (8th Cir. 1996). If the employer advances a legitimate, nondiscriminatory reason for the employee's discharge, the employee must present "'facts which if proven at trial would permit a jury to conclude that the [employer's] proffered reason is pretextual and that intentional discrimination was the true reason for the [employer's] actions.'" Id. at 1072 (quoting Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995)). A female employee may establish pretext in a gender discrimination case by demonstrating that she was treated differently than male employees who were similarly situated in all relevant respects. See id. at 1073; Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir. 1994).

Even if we assume for the purposes of our review that Newton established the elements of a prima facie case of gender discrimination, we agree with the district court that there is no substantial evidence in the record tending to show Cadwell's articulated reason for Newton's termination was a pretext for gender discrimination. Cadwell presented evidence that Newton was placed on probation after two consecutive quarters of sales significantly below her quarterly sales objectives and that Newton was discharged after she failed to meet the terms of her probation. This evidence establishes a legitimate, nondiscriminatory reason for Newton's discharge. To show Cadwell's reason was pretextual, Newton contends five similarly situated male salespeople were not discharged. Contrary to Newton's view, the summary judgment record shows the five male salespeople--Sinila, Hirasawa, Murri, McCann, and Sasala--were not similarly situated to Newton in all relevant respects. Although Sinila was

placed on probation at the same time as Newton, for the same reasons, and under the same probationary terms, Sinila was not terminated because he met his sales requirements by the end of his probation. Like Newton, Hirasawa was placed on probation for poor sales performance during the two preceding quarters, but he was not discharged because he met the sales requirements of his probation. Murri was not placed on probation despite his poor sales performance because of significant negative market variables hindering sales that were present only in his sales territory. McCann was given a warning rather than probation because his sales performance was not as poor as Newton's performance. About three years after Newton was terminated, Sasala was placed on probation for a shorter term than Newton and then was discharged for failing to meet his probationary requirements. Finally, Newton's contention that Cadwell's decision to place her on probation during the second quarter of 1993 was discriminatory because her sales were historically higher by the end of the year is unpersuasive because Cadwell placed Sinila on probation at the same time and under the same terms as Newton. Actually, Newton's contention is nothing more than an attack on Cadwell's business judgment. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 780, 781 (8th Cir. 1995) (stating federal courts do not review the wisdom or fairness of employers' business judgments unless those judgments involve intentional discrimination).

Neither Cadwell's treatment of the male salespeople cited by Newton nor any other evidence shows Cadwell's legitimate, nondiscriminatory reason for terminating Newton was a pretext for gender discrimination. Indeed, in her deposition, Newton testified Cadwell was motivated in its employment decisions, not by gender, but by whether a prospective employee could sell Cadwell's products effectively. We thus conclude the district court correctly granted summary judgment to Cadwell on Newton's gender discrimination claim.

Newton also contends the district court committed error in holding she failed to establish a prima facie case of quid pro quo sexual harassment. Relying on our existing

case law for quid pro quo claims, the district court concluded Newton had to show she was a member of a protected class, was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, the harassment was based on sex, and Newton's submission to the unwelcome advances was an expressed or implied condition for receiving job benefits or her refusal to submit resulted in a tangible job detriment. See Cram, 49 F.3d at 473. In rejecting Newton's claim for failure to make a prima facie case, the district court stated, "Even assuming that Love pursued [Newton] after their affair, there is no evidence that job benefits were associated with submission to those advances."

We agree with the district court that Newton suffered no adverse employment action because she rejected Love's advances after their consensual affair ended. Newton admitted Love never conditioned her continued employment on submission to Love's sexual advances, and Newton was neither denied her requested transfer to another sales territory nor discharged because she refused to submit. Rather, the record shows Newton was not transferred because Love and another regional supervisor could not reach an agreement about an equitable trade of salespeople and Cadwell would not agree to Love's suggestion that Newton be transferred without a different salesperson being assigned to Love's territory. The record also shows that Newton's declining sales were not related to her former relationship with Love or her rejection of his advances. Having dropped to the bottom rung of Cadwell's sales force, Newton was placed on probation during the second quarter of 1993 and was discharged for her failure to meet the sales requirements of her probation. Newton herself stated that she was not satisfied with her sales numbers and that she was placed on probation and fired because of two bad quarters of sales.

Nevertheless, Newton's failure to show a tangible job detriment related to her rejection of Love's amorous advances does not end our inquiry. After the district court granted summary judgment to Cadwell, the United States Supreme Court decided Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257 (1998), and Faragher v. City of

Boca Raton, 118 S. Ct. 2275 (1998). In Ellerth and Faragher, the Supreme Court announced the standards for deciding whether an employer is vicariously liable for a supervisor's sexually harassing conduct and stated the labels quid pro quo and hostile work environment are no longer controlling for purposes of establishing employer liability. See Ellerth, 118 S. Ct. at 2265, 2270-71; Faragher, 118 S. Ct. at 2292-93. Putting these so-called labels aside, the Court held that when a supervisor's sexual harassment of an employee results in a tangible employment action such as discharge, demotion, or undesirable reassignment, the employer is vicariously liable to the employee. See Ellerth, 118 S. Ct. at 2270; Faragher, 118 S. Ct. at 2292-93. The Court also held that when no tangible employment action is taken, the employer will be vicariously liable to "a victimized employee for an actionable hostile environment created by a supervisor[,]" unless the defending employer can prove by a preponderance of the evidence a two-pronged affirmative defense to liability or damages. Ellerth, 118 S. Ct. at 2270; see Faragher, 118 S. Ct. at 2292-93.

Although Newton placed a quid pro quo label on her claim, Newton pleaded in her complaint that Love continued to make unwelcome and uninvited sexual advances toward Newton after their affair ended. Because Newton's claim does not involve either fulfilled threats or other detrimental employment action resulting from her refusal to submit to Love's sexual overtures, Newton's claim "should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct." Ellerth, 118 S. Ct. at 2265. In light of the existing law in this circuit, the district court understandably categorized Newton's claim as a quid pro quo sexual harassment claim, rejected the claim because Newton failed to show her refusal to submit resulted in a detrimental employment action, and did not decide whether Newton was subjected to severe or pervasive sexual harassment sufficient to constitute a hostile work environment. See Cram, 49 F.3d at 473-74. Although we agree with the district court that the summary judgment record does not establish Newton suffered any kind of detrimental employment action related to her rejection of Love's advances, this is no longer controlling on the issue of Cadwell's vicarious liability after Ellerth.

-6-

Rather, the absence of a detrimental employment action allows Cadwell to present an affirmative defense if Newton can show Love's conduct was sufficient to create a hostile work environment.  See Ellerth, 118 S. Ct. at 2265, 2270.  Because the district court did not determine whether Newton established that Love's behavior was severe or pervasive sexual harassment, we are unwilling to assume discrimination cannot be proved and remand this case to the district court to give Newton the opportunity to show she has a claim for which Cadwell is liable.  See Ellerth, 118 S. Ct. at 2271.

In summary, we affirm the district court's grant of summary judgment to Cadwell on Newton's gender discrimination claim; however, we reverse the district court's grant of summary judgment on Newton's sexual harassment claim and remand for further proceedings on that claim consistent with this opinion.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.