Caren A. GREEN, Plaintiff,

v.

THE SERVICEMASTER COMPANY
and Leroy Luhring, Defendants.

No. C97–3120–MWB.

United States District Court,
N.D. Iowa,
Central Division.

July 21, 1999.

Blake Parker, Blake Parker Law Office, Fort Dodge, IA, for plaintiff.

James P. Osick, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

## TABLE OF CONTENTS

I.    *INTRODUCTION* ............................................... 1005

II.   *STANDARDS FOR SUMMARY JUDGMENT* ............................... 1006

III.  *FACTUAL BACKGROUND* ........................................... 1008

IV.  *LEGAL ANALYSIS* ............................................... 1009
    A.  *Sexual Harassment Claim* ........................................... 1009
       1.  *The Ellerth/Faragher standard* ...................................... 1010
       2.  *Green's prima facie case of hostile work environment* .................. 1010
       3.  *The Ellerth/Faragher affirmative defense* ........................... 1012
    B.  *The Retaliation Claims* ............................................ 1014
       1.  *Retaliation for filing the EEOC and ICRC charge* ..................... 1015
       2.  *Retaliation for filing a federal lawsuit* .............................. 1016

V.   *CONCLUSION* ................................................. 1017

In this employment discrimination lawsuit, the plaintiff-employee alleges that her former employer violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by subjecting her to a hostile work environment and then retaliating against her for engaging in protected activity to remedy the perceived harassment. The employer has moved for summary judgment on all counts. Because the plaintiff alleges sexual harassment at the hands of her former supervisor, resolution of the employer's summary judgment motion takes a new twist. The court must consider—for the first time—the newly established affirmative defense set forth by the United States Supreme Court in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

### I. INTRODUCTION

Plaintiff Caren A. Green filed this employment discrimination lawsuit against her former employer, defendant The Servicemaster Company ("Servicemaster"), on December 15, 1997. She amended her complaint on October 5, 1998. In her amended complaint, Green asserts three federal claims for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* In Count I, Green alleges that she was sexually harassed by her former supervisor at Servicemaster, defendant Leroy Luhring. In Count II, Green asserts that Servicemaster retaliated against her for filing a charge of discrimination by lodging false complaints and reprimands against her. Finally, in Count IV, Green alleges that Servicemaster discharged her in retaliation for filing this lawsuit. Green also alleges a pendant state law claim for assault (Count III) against Luhring. The defendants answered the amended complaint, generally denying Green's allegations and raising a variety of affirmative defenses.

On April 1, 1999, Servicemaster and Luhring filed their respective motions for summary judgment. Although Green concedes that summary judgment is appropriate on her assault claim against defendant Luhring, she asserts that genuine issues of material fact preclude summary judgment

on her remaining three claims against Servicemaster.[1]

The court heard telephonic oral arguments on Servicemaster's motion on July 12, 1999. Servicemaster was represented by James P. Osick of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Illinois. Green was represented by Blake Parker of The Blake Parker Law Office, Fort Dodge, Iowa. The court will begin with a consideration of the standards applicable to a motion for summary judgment. Next, the court will set forth the factual background established by the summary judgment record. Finally, the court will turn to its legal analysis of Servicemaster's motion.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R.CIV.P. 56 in a number of recent decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. ... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

■ Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment

---

1. The two instances of alleged assaultive behavior occurred in 1994 and are therefore time-barred by Iowa's two-year statute of limitations. *See* IOWA CODE § 614.1(2).

should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford* ); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford* ); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford* ); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford* ); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow,* 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford* ); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford,* 37 F.3d at 1341); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford,* 37 F.3d at 1341); *Johnson,* 931 F.2d at 1244.

■ However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, ——, 1999 WL 107986 *2 (8th Cir.1999) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow,* 128 F.3d at 1205; *accord Helfter,* 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995).

These special cautions seem to the court to be no less applicable here to plaintiff's retaliation claims, because such claims also often depend upon inferences of the employer's motive, as is shown by application of the same burden-shifting analysis to retaliation claims as is employed in discrimination cases, *see Moschetti v. Chicago, Central & Pacific R. Co.,* 119 F.3d 707, 709 (8th Cir.1997) (The order and allocation of the burden of proof in [a retaliation case under 42 U.S.C. § 2000e–3(a) ] is laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *accord Manning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997); *Jackson v. Delta Special Sch. Dist. No. 2,* 86 F.3d 1489, 1494 (8th Cir. 1996), and the acceptance of inferential proof of intent in constructive discharge

cases. *See Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.,* 130 F.3d 349, 354 (8th Cir.1997) ("[I]n the absence of conscious intent [to force the employee to quit], the intention element may nevertheless be proved with a showing that the employee's 'resignation was a reasonably foreseeable consequence' of the [discriminatory or retaliatory conduct]," quoting *Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101,* 3 F.3d 281, 285 (8th Cir.1993)). The court will therefore keep these special cautions in mind while considering Servicemaster's motion for summary judgment.

### III. FACTUAL BACKGROUND

Servicemaster provides certain management services, including custodial services, to various hospitals, schools, and businesses. The Ellsworth Community College in Iowa Falls, Iowa, is one of Servicemaster's clients. In September 1993, Servicemaster hired Green to perform custodial duties at Ellsworth Community College. As a custodial employee at the college, Green was a member of the International Brotherhood of Teamsters (the "Union"), and was governed by the collective bargaining agreement between Servicemaster and the Union. At all times relevant, Servicemaster had in place a written policy prohibiting sexual harassment.

Throughout her employment with Servicemaster, Green was assigned to the night shift. Luhring, who worked the morning shift, was Green's supervisor until his termination by Servicemaster in July, 1996. Newt DeBerg was Green's "lead" person and directed her work. DeBerg was also Green's union steward.

A less than amicable relationship developed between Green and Luhring early on in Green's employment with Servicemaster. For example, in the Fall of 1993, Green sought and obtained DeBerg's assistance in filling out her timecard to reflect certain overtime hours she had worked.

Luhring, apparently angered that Green was pursuing overtime pay, told DeBerg that he did not think the "blond bitch" (referring to Green) would know to request the additional compensation. Thereafter, when Luhring would discuss Green with DeBerg, Luhring referred to Green as the "blond bitch." In January of 1994, Green missed a day of work due to a snowstorm. When Luhring realized that Green would be paid for the day he stated that "[Green] owes me a day and I'll get her for that." In addition to these incidents, Green provides several examples of occasions in which she contends Luhring unjustly criticized her work or otherwise attempted to sabotage her employment with Servicemaster by instituting unfounded disciplinary actions.

In the Spring of 1994, Green was mopping a hallway when Luhring and an unidentified salesman passed by. The salesman warned Luhring that he should beware of a woman with a broom—referring to Green. Luhring responded "I don't have to look out for her, I'm her boss. I'd knock her ass in that cleaning bucket if she ever comes towards me."[2] Green overheard these remarks and complained to the Union through DeBerg.

Green continued to have difficulty with Luhring throughout the summer of 1994. According to DeBerg, Luhring "targeted" Green and placed her under "surveillance," often returning to work after his shift was completed to check on Green. On one occasion, Luhring asked DeBerg to accompany him to investigate whether Green was sleeping in her car during her shift. Green was not in her car and was instead found to be working. On another occasion, Luhring observed Green sleeping during one of her breaks. Instead of waking Green up, Luhring left to procure a witness. When Luhring returned with the witness, Green was working. Although Luhring wrote the matter up and reported it to a Servicemaster representative, no

---

**2.** Although Servicemaster denies that the salesman incident occurred, it accepts Green's allegations as true for purposes of summary judgment.

disciplinary action was taken. In addition to these incidents, Luhring continually shifted Green's work hours. Luhring informed DeBerg that he did this to interfere with Green's ability to perform her duties at her second job as the groundskeeper for the Alden Cemetery.

In the Fall of 1994, Green and DeBerg were working in the college library. Luhring, under the influence of alcohol, arrived to assist. Luhring made the following statements to DeBerg in reference to Green: "Look at the way her tits lay on those books she carries. I bet she has a tight ass, the way her pants look when she bends over." DeBerg informed Luhring that he "should watch his mouth," and Luhring responded: "If she says anything to me, I'll knock her ass in that cleaning bucket."[3] DeBerg reported this incident to a Union representative who, in turn, reported the matter to a Servicemaster representative. A meeting was held regarding the library incident. Although Luhring denied any wrongdoing, he was warned not to do it again. Beyond this warning, no formal discipline was imposed.

Green filed a charge of sexual harassment with both the Equal Employment Opportunity Commission and the Iowa Civil Rights Commission in February, 1995.[4] Thereafter, she claims she was subjected to a myriad of retaliatory acts including stalking, false accusations, heightened "surveillance," and unwarranted reprimands. Specifically, Green complains that Luhring spied on her during her shifts and outside of work, purposefully attempted to frighten her by sneaking up on her during her evening shifts, accused her of stealing pop cans from a classroom, and attempted to reprimand her for doing things that other custodians were allowed to do.

On December 15, 1997, Green filed this lawsuit. Approximately one week later, on December 22 and 23, Green left work two hours early. Green contends that she obtained permission to leave early on these dates from her substitute lead man. Co-worker Beulah Torgerson reported Green's early absence on December 23 to then supervisor Doug Manifold.[5] Manifold subsequently suspended Green for falsifying her time sheets for the week of December 22. When Green returned to work on January 15, 1998, she learned that Beulah Torgerson had reported her for leaving work early. Green confronted Torgerson about the incident. The next day, January 16, Torgerson filed a complaint against Green alleging that Green had threatened her. An investigation into the incident followed. Servicemaster terminated Green's employment on February 10, 1998, citing the incident with Beulah Torgerson as justification.

The Union grieved Green's suspension and discharge. The grievances proceeded to arbitration and after a hearing, an arbitrator denied Green's grievances concluding that Servicemaster had just cause to suspend Green and to terminate her employment.

## IV. LEGAL ANALYSIS

### A. Sexual Harassment Claim

Green's first claim arises from the alleged sexual harassment she suffered at the hands of Servicemaster supervisor Leroy Luhring. Green styles this charge as a claim for hostile work environment.

---

**3.** As with the salesman incident, Servicemaster denies that this library incident occurred. Nevertheless, for purposes of summary judgment, Servicemaster accepts the allegations as true.

**4.** In this charge, Green complained of sexual harassment by Luhring as well as co-worker Roger Torgerson. Torgerson made a degrading sexually explicit remark to Green and one of Green's co-workers. Another co-worker overheard the remark and reported it to Servicemaster. Torgerson was terminated and later reinstated pursuant to an agreement with the Union. The incident involving Torgerson is not a subject of this lawsuit.

**5.** Luhring was dismissed by the college on July 29, 1996 due to the college's dissatisfaction with his performance as supervisor of the custodians. Servicemaster did not contest Luhring's discharge.

Servicemaster initially challenges Green's ability to establish her *prima facie* case of a hostile work environment. Alternatively, Servicemaster contends it is entitled to summary judgment on the newly established affirmative defense available to defending employers in cases based on the alleged harassing conduct of a supervisor.

### 1. The Ellerth/Faragher standard

■ Last year, the United States Supreme Court handed down two decisions that dramatically altered the landscape of sexual harassment claims premised on the conduct of supervisory employees. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In *Faragher* and *Ellerth,* the Court set forth the following standard to be applied in determining whether a supervisor's harassing conduct subjects an employer to liability for a hostile environment claim under Title VII:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see FED. R.CIV.P. 8(C). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2270; *Faragher,* 524 U.S. at —— – ——, 118 S.Ct. at 2292–93. Under this new standard, the analysis for sexual harassment claims against employers for the conduct of their supervisory employees proceeds as follows. The threshold question that must be answered is whether the plaintiff-employee suffered a tangible employment action. *See id.* If a supervisor's alleged sexual harassment of an employee culminates in "a tangible employment action such as discharge, demotion, or undesirable reassignment, the employer is vicariously liable to the employee." *Newton v. Cadwell Laboratories,* 156 F.3d 880, 883 (8th Cir.1998) (citing *Ellerth* and *Faragher*). If no tangible employment action is taken, the analysis shifts to a consideration of whether the plaintiff-employee has set forth an actionable claim for hostile work environment. *See Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2270; *Faragher,* 524 U.S. at —— – ——, 118 S.Ct. at 2292–93. Provided the plaintiff-employee can establish an actionable claim of hostile work environment, the employer will be vicariously liable for the supervisor's harassing conduct unless, of course, the employer can prove by a preponderance of the evidence that (1) it exercised reasonable care to prevent and promptly correct the harassing behavior and (2) that the complaining employee unreasonably failed to take advantage of available preventive or corrective opportunities or otherwise avoid harm. *Newton,* 156 F.3d at 883 (citing *Ellerth* and *Faragher*); *see also Todd v. Ortho Biotech, Inc.,* 175 F.3d 595 (8th Cir. 1999) (citing same); *Phillips v. Taco Bell Corp.,* 156 F.3d 884, 889 (8th Cir.1998) (citing same).

### 2. Green's prima facie case of hostile work environment

In this case, there is no dispute that Luhring was a supervisor under *Ellerth* and *Faragher.* The parties further agree that Luhring's alleged harassment did not result in a tangible employment action against Green. Under the *Ellerth/Faragher* standard, the court must now consider whether Green has made out an actionable claim of hostile work environment.

■ Previously, to establish a *prima facie* case of actionable hostile work environment harassment, a plaintiff has been required to demonstrate five elements: (1)

that he or she belonged to a protected class; (2) that he or she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action. *See, e.g., Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1377 (8th Cir.1996); *Cram v. Lamson & Sessions Co.,* 49 F.3d 466, 474 (8th Cir.1995); *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993). *Ellerth* and *Faragher* have modified this requisite showing by dropping the fifth element out of the analysis in cases where the alleged harasser is a supervisor. *Watts v. The Kroger Co.,* 170 F.3d 505, 509 (5th Cir.1999).[6] Once the plaintiff employee establishes the first four elements, the employer is vicariously liable for a supervisor's harassment.[7] The employer may then avoid liability only "by proving an affirmative defense of reasonable oversight and of the employee's unreasonable failure to take advantage of corrective opportunities." *Nichols v. American Nat'l Ins. Co.,* 154 F.3d 875, 887 (8th Cir.1998).

■ Servicemaster challenges Green's ability to establish the third and fourth elements of her hostile work environment claim.[8] As indicated previously, the third element requires Green to show that Luhring's harassment was based on her gender. The United States Court of Appeals for the Eighth Circuit has explained that the "key inquiry" under this factor is whether " 'members of one sex are exposed to disadvantageous terms or conditions of em-

ployment to which members of the other sex are not exposed.' " *Quick,* 90 F.3d at 1378 (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring)). Servicemaster asserts that Green's complaints that she was the only employee subject to discipline by Luhring "establishes merely that [Green] was singled out because her supervisor did not like her." Defendant's Reply Brief at 2. According to Servicemaster, this showing is insufficient to establish that Luhring's conduct was based on gender. However, Servicemaster's argument ignores what the court considers to be the primary basis of Green's hostile environment claim—the remarks Luhring made during the salesman and library incidents. When viewed in the light most favorable to Green, the facts establish that during both of these incidents Luhring threatened to "knock [Green's] ass in [her] cleaning bucket." Moreover, during the library incident, Luhring made explicit reference to Green's anatomy and by their very nature, Luhring's crude remarks were directed at Green because of her gender. These permissible findings are sufficient to establish that Luhring's harassment was based on sex.

■ Servicemaster also asserts that Green is unable to show that the alleged harassment affected a term, condition, or privilege of her employment. This element means "that the workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is sufficiently severe or pervasive to alter the conditions of

---

6. *Ellerth* and *Faragher* did not alter the analysis for hostile work environment claims against non-supervisory co-workers. *See, e.g., Scusa v. Nestle U.S.A. Co., Inc.,* 181 F.3d 958 (8th Cir.1999) (instructing that a plaintiff must establish all five elements for a *prima facie* case of hostile work environment harassment against a non-supervisory co-worker); *Carter v. Chrysler Corp.,* 173 F.3d 693, 701 (8th Cir.1999) (same).

7. As a practical matter, it should be noted that the first element—membership in a pro-

tected group—is always satisfied. *See Quick,* 90 F.3d at 1377 (observing that membership in a protected class is established by demonstrating that the plaintiff-employee is a man or a woman).

8. Servicemaster has not challenged Green's ability to establish the second element—that the harassment was unwelcome—and it is evident to the court that this element has been satisfied.

the victim's employment and create an abusive working environment.'" *Quick,* 90 F.3d at 1378 (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367). The Eighth Circuit Court of Appeals has made the following observations regarding the manner in which this element is to be evaluated:

> Whether an environment is hostile or abusive cannot be determined by a "mathematically precise test"; it entails consideration of the entire record and all the circumstances. There is no particular factor that must be present, but conduct that is merely offensive is insufficient to implicate Title VII. *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Relevant considerations include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* A discriminatorily abusive work environment may exist where the harassment caused economic injury, affected the employee's psychological well-being, detracted from job performance, discouraged an employee from remaining on the job, or kept the employee from advancing in his or her career.

*Quick,* 90 F.3d at 1378.

Servicemaster argues that the salesman incident and the library incident were isolated events not sufficiently severe or pervasive to constitute actionable harassment. Green disagrees and further asserts that in addition to making these harassing remarks, Luhring repeatedly referred to her as the "blond bitch," and placed her under a "microscope"—incessantly scrutinizing her performance and attempting to discipline her for matters that were not treated as offenses if committed by other custodians.

Servicemaster acknowledges that at this stage of the proceedings, the court must accept the statements and conduct of which Green complains as true. Nevertheless, Servicemaster argues that Green is still unable to demonstrate that the harassment was either severe or pervasive

enough to affect a term or condition of Green's employment. After considering the relevant factors, the court disagrees. Although Luhring made crude remarks about Green's anatomy on only one occasion—during the library incident—the record reflects that he repeatedly referred to Green as the "blond bitch." Of course, the frequency of the alleged harassing conduct is only one consideration in the analysis. *See Quick,* 90 F.3d at 1378. Turning next to the severity of the conduct, the court finds that a reasonable fact-finder could conclude that Luhring's observations about Green's breasts and behind were so odious and demeaning that they are sufficiently severe to give rise to an actionable hostile work environment claim. Similarly, a fact-finder could reasonably conclude that Luhring's promises to "knock [Green's] ass into her cleaning bucket" were physically threatening and humiliating. In light of these permissible findings, a jury could conclude that Luhring's conduct unreasonably interfered with Green's work performance. Although the court expresses no opinion as to whether Green will ultimately succeed on this claim, it cannot conclude that Luhring's conduct was insufficient— as matter of law—to constitute actionable sexual harassment.

The court concludes that genuine issues of material fact exist as to whether Green has established an actionable hostile environment claim. Accordingly, Servicemaster's motion for summary judgment on the ground Green has failed to show her *prima facie* case of hostile work environment is denied.

### 3. *The Ellerth/Faragher affirmative defense*

■ As indicated previously, because Green did not suffer a tangible employment action, Servicemaster is entitled to raise the *Ellerth/Faragher* affirmative defense. *Miller v. Woodharbor Molding & Millworks,* 174 F.3d 948, 950 (8th Cir.1999) (per curiam); *Phillips* 156 F.3d at 889. Again the two elements of this defense are

(1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2270; *Faragher,* 524 U.S. at ——, 118 S.Ct. at 2292–93.

To establish the first element of this defense, Servicemaster must show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *See Phillips,* 156 F.3d at 889; *see also Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2270; *Faragher,* 524 U.S. at ——, 118 S.Ct. at 2293. In regard to this element, the Supreme Court has observed that "[w]hile proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may be appropriately addressed in any case when litigating the first element of the defense." *Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2270; *Faragher,* 524 U.S. at ——, 118 S.Ct. at 2293.

Here it is undisputed that throughout Green's employment with Servicemaster, Servicemaster had an anti-harassment policy in place. It is also undisputed that Green was aware of this policy. As for Servicemaster's response to Green's complaint of harassment, the facts are in dispute. Servicemaster directs the court's attention to its prompt response to the complaint lodged by a co-worker regarding the incident in which Roger Torgerson made sexually explicit statements about Green and another employee. Servicemaster also asserts that it was only informed of one incident involving Luhring—the library incident—and that it promptly investigated and remedied this complaint. As an initial matter, the court reminds Servicemaster that the incident involving Roger Torgerson is not at issue here. The

court does not understand Green to complain about that matter—her complaint is directed solely at Luhring's conduct. Furthermore, the record reflects that the extent of Servicemaster's "response" to Green's allegations was to warn Luhring not to do it again and to limit his contact with Green to that necessary for work assignments. Green argues that this response was woefully inadequate and illustrates the dichotomy between complaints levied against co-workers (i.e. Roger Torgerson) and those brought against supervisors such as Luhring. Under these circumstances, a genuine issue of material fact exists and it will be for the jury to decide whether Servicemaster's actions were sufficient to satisfy this element of the affirmative defense.

Although the court has already concluded that summary judgment is precluded based on the disputed facts surrounding the first element of the affirmative defense, the court notes that fact issues also exist as to the second element. The second element requires Servicemaster to prove that Green unreasonably failed to take advantage of any preventive opportunities provided by Servicemaster or to avoid harm otherwise. *Ellerth,* 524 U.S. at ——, 118 S.Ct. at 2270; *Faragher,* 524 U.S. at ——, 118 S.Ct. at 2292–93. Servicemaster places great stock in the fact that Green did not complain directly to it about Luhring's alleged behavior. Servicemaster asserts that Green's failure to complain was particularly unreasonable given the fact that Servicemaster had promptly remedied the Roger Torgerson incident.[9]

It appears to the court that Servicemaster has ignored the alternative "to avoid harm otherwise" language of this element. Green did complain to her "lead" man who was also her union steward. Although the Union did not grieve the salesman incident, the Union was directly involved in the meeting with Servicemaster regarding

---

9. As Servicemaster points out, Green did not complain about the Roger Torgerson episode.

That matter was brought to Servicemaster's attention by one of Green's co-workers.

the library incident. The court finds that this at least generates a fact question as to whether Green attempted to "avoid harm otherwise." The United States Court of Appeals for the Fifth Circuit recently observed that "[t]aking advantage of [a] union grievance procedure falls within [the language of the second element] because both the employer and union procedures are corrective mechanisms to avoid harm." *Watts v. The Kroger Co.*, 170 F.3d 505, 510 (5th Cir.1999).

Although Servicemaster is certainly entitled to raise the *Ellerth/Faragher* affirmative defense, genuine issues of material fact preclude summary judgment. Accordingly, this claim will proceed to trial.

### B. The Retaliation Claims

Green alleges two claims of retaliation. In Count II, Green asserts that after she filed her first charge of sexual harassment with the EEOC and the ICRC in February, 1995, she suffered acts of retaliation in the form of false complaints about her work and unwarranted reprimands. The gravamen of this claim is that Green was forced to work under a "microscope," constantly scrutinized by Luhring. In Count IV, Green alleges that she was discharged in retaliation for filing the instant lawsuit. Servicemaster seeks summary judgment on both retaliation claims. As to Count II, Servicemaster asserts that Green cannot establish a *prima facie* case of retaliation. As to Count IV, Servicemaster asserts that Green cannot show that the reason for her termination was pretext.

To make a *prima facie* case on her retaliation claims under Title VII, 42 U.S.C. § 2000e–3(a), Green must show the following: (1) she filed a charge of discrimination or engaged in other protected activity; (2) her employer subsequently took adverse employment action against her; and (3) the adverse action was causally linked to her protected activity. *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, at 817–18 (8th Cir.1998); *Cross v. Cleaver*, 142 F.3d 1059, 1071 (8th Cir.1998) ("The elements of a claim of retaliation in violation of Title VII are the following: (1) the plaintiff filed a charge of harassment or engaged in other protected activity; (2) the plaintiff's employer subsequently took adverse employment action against the plaintiff; and (3) the adverse action was causally linked to the plaintiff's protected activity."); *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1245 (8th Cir.1998) ("There are three elements of a prima facie case in a Title VII retaliation claim: (1) the plaintiff engaged in statutorily protected activity; (2) the plaintiff suffered an adverse employment action; and (3) this adverse employment action occurred because the plaintiff engaged in statutorily protected activity."); *Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir.1997) ("To prevail on a retaliation claim brought under Title VII, 42 U.S.C. § 2000e–3(a), an employee must show that (1) she filed a charge of discrimination; (2) the employer subsequently took adverse employment action against her; and (3) the adverse action was causally linked to the filing of the charge of discrimination.")

Once this *prima facie* showing is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and, if the employer meets that burden, the presumption of retaliation disappears. *Smith*, 151 F.3d at 817–18; *Coffman*, 141 F.3d at 1244 (citing *Jackson v. Delta Special Sch. Dist. No. 2*, 86 F.3d 1489, 1494 (8th Cir.1996)); *accord Manning*, 127 F.3d at 692; *Harris*, 119 F.3d at 1318; *Moschetti*, 119 F.3d at 709 (explaining this burden-shifting analysis, citing *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir.1996)); *Montandon*, 116 F.3d at 359. The fact finder is then "left to determine if [the employee] presented evidence capable of proving that the [employer's] proffered reasons for termination were a pretext for illegal retaliation." *Harris*, 119 F.3d at 1318. *Accord Moschetti*, 119 F.3d at 709; *Montandon*, 116 F.3d at 359.

### 1. Retaliation for filing the EEOC and ICRC charge

Under the sexual discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), an employer is forbidden to retaliate against employees for opposing sexual discrimination.[10] It is undisputed that Green engaged in activity protected by Title VII when she filed a charge of sexual harassment with the EEOC and the ICRC in February, 1995. Accordingly, Green has satisfied the first element of her *prima facie* case on this claim.

Servicemaster takes issue with the remaining two elements, asserting that Green cannot demonstrate either an adverse employment action or causation. In *Delashmutt v. Wis–Pak Plastics, Inc.*, 990 F.Supp. 689 (N.D.Iowa 1998), this court explained the "adverse employment action" element as follows:

> "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997). *See also Manning*, 127 F.3d at 692 (quoting *Montandon* ). [T]he adverse action does not have to be a discharge, *see Manning*, 127 F.3d at 692 ("[A]ctions short of termination may constitute an adverse employment action within the meaning of [42 U.S.C. § 2000e–3(a)]."); *Kim*, 123 F.3d at 1060 ("[R]etaliatory conduct may consist of 'action less severe than outright discharge,'" quoting *Dortz*, 904 F.Supp. at 156), [but] the allegedly retaliatory conduct must nonetheless be " 'more disruptive than a mere inconvenience or an alteration of job responsibilities' [or][c]hanges in duties or working conditions that cause no materially significant disadvantage." *Kim*, 123 F.3d at 1060 (some internal quotations and citations omitted) (citing *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994), and *Thomas v. St. Luke's Health Sys., Inc.*, 869 F.Supp. 1413, 1435 (S.D.Iowa 1994), *aff'd*, 61 F.3d 908 (8th Cir.1995) (table) (No. 94–4081)). In *Kim*, the Eighth Circuit Court of Appeals explained that what the court must look for is "the kind of serious employment consequences that adversely affected or undermined [the employee's] position, even if [s]he was not discharged, demoted or suspended." *Kim*, 123 F.3d at 1060. Furthermore, the court may examine the cumulative effect of the employer's allegedly retaliatory actions, rather than determining whether any individual action upon which the claim relies was sufficiently adverse. *Id.*

*Delashmutt*, 990 F.Supp. at 699.

Here, Green contends that Luhring repeatedly spied on her while she was working, snuck up on her and frightened her on at least one occasion, and repeatedly reported her for the slightest work deficiencies. Green further complains that during the July 4, 1996 holiday, Luhring refused to sign her timecard to reflect holiday pay. Because her card was not signed in advance of the holiday weekend, Green determined she should work.

The court has reviewed the plethora of acts Green claims were retaliatory for filing her EEOC and ICRC charge, and is compelled to agree with Servicemaster that Green has not generated a genuine issue of material fact on this element. It

---

10. Section 2000e–3(a) provides:

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

is undisputed that Green continued to work as a custodian after filing her discrimination charge and that she regularly received the raises and benefits applicable to that position. Moreover, the majority of disciplinary episodes of which she complains did not culminate in formal reprimands. On those occasions that she was reprimanded, Green had committed some violation—no matter how slight. As for the July 4, 1996 incident, it is undisputed that Green received holiday pay as well as compensation for the actual hours she worked. That leaves the incidents in which Luhring kept Green "under surveillance." Although the court suspects such conduct could certainly contribute to a hostile work environment, the court is unable to find that the conduct constituted an "adverse employment action" as that term is used under Title VII. See Kim, 123 F.3d at 1060 (noting that retaliatory conduct must be "more disruptive than a mere inconvenience or an alteration of job responsibilities [or] [c]hanges in duties or working conditions that cause no materially significant disadvantage.")

The court finds that Green is unable to establish that she suffered an adverse employment action. Because Green cannot demonstrate this second element of a *prima facie* case of retaliation, summary judgment in favor of Servicemaster is appropriate on this claim.

### 2. Retaliation for filing a federal lawsuit

■ As with the first retaliation claim, it is undisputed that Green engaged in protected activity under Title VII when she filed her employment discrimination lawsuit in this court. It is further undisputed that Green suffered an adverse employment action by being terminated, and that her termination occurred shortly after she filed her federal complaint. Although Servicemaster concedes that Green is able to establish a *prima 'facie* case of retaliation on this claim, it maintains that it has articulated a legitimate, non-discriminatory reason for her discharge and that Green cannot generate a fact question as to whether that reason was pretext.

As indicated previously, Servicemaster contends that it fired Green for getting into a confrontation with co-worker Beulah Torgerson. Servicemaster asserts that Green "threatened" Torgerson and on this ground, was discharged. Servicemaster further asserts that the only evidence Green offers to prove that she was fired in retaliation for filing her lawsuit is proximity in time. Servicemaster argues that such evidence, without more, is insufficient to generate a genuine issue of material fact as to pretext.

■ Servicemaster is correct in its assertion that proximity in time—standing alone—is ordinarily insufficient to generate a fact question as to pretext. See, e.g., Kiel, 169 F.3d 1131, 1136 (8th Cir.1999) (observing, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.") However, the court disagrees with Servicemaster's assertion that Green relies solely on the temporal connection between the filing of her lawsuit and her discharge. Green offers the affidavit of Newt DeBerg. DeBerg avers that other custodians have engaged in confrontational behavior similar to the incident between Green and Beulah Torgerson, and that no disciplinary action has resulted. Affidavit of Newt DeBerg at ¶ 15. The court finds this evidence sufficient—by the slimmest of margins—to create a fact issue as to whether Servicemaster disciplined Green more harshly because she had instituted a lawsuit against it. Cf. Kiel, 169 F.3d at 1136 (noting that plaintiff had not offered any evidence of pretext such as an allegation that the employer disciplined hearing employees less harshly). Because Green has generated a genuine issue of material fact on this retaliation claim, Servicemaster's motion for summary judgment on Count IV is denied.

## V. CONCLUSION

The court concludes that genuine issues of material fact preclude summary judgment on Green's hostile work environment claim contained in Count I of her complaint. Although Servicemaster will be entitled to raise the *Ellerth/Faragher* affirmative defense to Green's hostile work environment claim at trial, genuine issues of material fact prevent judgment as a matter of law on that defense. The court further finds that Green has failed to establish a *prima facie* case of retaliation in Count II of her complaint because she cannot show that she suffered an adverse employment action. Finally, the court concludes that fact issues preclude summary judgment on the retaliation claim contained in Count IV. **Servicemaster's** motion for summary judgment **is granted as to Count II, and denied as to Counts I and IV. Luhring's** motion for summary judgment **is granted in its entirety.**

**IT IS SO ORDERED.**