**Tiffany D. SHAW, Plaintiff–Appellant,**

**v.**

**AUTOZONE, INC., Defendant–Appellee.**

**No. 97–3654.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 27, 1999.

Decided June 8, 1999.

808

James W. Mertes (argued), Pignatelli, Liston & Mertes, Rock Falls, IL, for Plaintiff–Appellant.

Arthur B. Smith, Jr., Ogletree, Deakins, Murphy, Smith & Polk, Chicago, IL, Richard A. Hammond, Kullman, Inman, Bee, Downing & Banta, Robert B. Worley, Jr. (argued), The Kullman Firm, New Orleans, LA, for Defendants–Appellees.

Before ESCHBACH, FLAUM and MANION, Circuit Judges.

MANION, Circuit Judge.

The district court granted summary judgment to AutoZone on Tiffany Shaw's claim that her supervisor, Donald Noble, sexually harassed her by creating a hostile work environment. While the case was pending on appeal, the Supreme Court changed the standard of employer liability for sexual harassment perpetrated by a supervisor. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Shaw argues that because the district court applied the wrong liability standard to her case, this court should vacate summary judgment. AutoZone counters that the record supports the affirmative defense recognized in *Ellerth.* *See* 118 S.Ct. at 2270. Because the undisputed facts establish that Auto-Zone is entitled to the *Ellerth* affirmative defense, we affirm.

## I. Facts

Tiffany Shaw was an assistant manager of AutoZone's Rock Falls, Illinois, store from February to June of 1995. AutoZone is an automotive parts retailer with many stores nationwide. The store manager in Rock Falls was Donald Noble. Noble's supervisor was Area Advisor Dave Hunsche; Hunsche's supervisor was District Manager Steve Lang.

Shaw submitted an employment application to Noble at the Rock Falls store.

Noble sent the application to Steve Dauw, a recruiter who then reviewed the application along with other people in AutoZone's management. Noble was asked for his input in the hiring process, but Dauw conducted the employment interview and offered Shaw the job. Store managers did not have authority to hire, fire, or promote employees on their own. Area advisors made hiring and promotion decisions, and termination decisions were made by an area advisor or district manager after consulting with the director of human resources or the equal opportunity manager.

When AutoZone hired Shaw, it provided her with a copy of the AutoZone Handbook and Safety Booklet, and it informed her that it was her "responsibility to read and learn the policies and procedures contained in the AutoZone Handbook and Safety Booklet." Shaw signed a form acknowledging her receipt of the handbook and her understanding of her responsibility to read and learn the policies and procedures contained in it.

The AutoZone Handbook contained a sexual harassment policy which provided:

Sexual Harassment

AutoZone will not tolerate sexual harassment. Such conduct or the encouragement of such conduct may result in termination.

AutoZone's stance on this issue extends to all AutoZoners, as well as people outside AutoZone that we do business with—our customers, suppliers and vendors. Every AutoZoner needs to be aware of AutoZone's sexual harassment policy.

**Sexual harassment means unwelcome sexual advances, verbal or physical. Sexual harassment occurs when:**

**\*Submission to such conduct becomes, either explicitly or implicitly, a term or condition of employment.**

**\*Submission to, or rejection of, such conduct by an individual becomes the basis for employment decisions affecting any individual.**

**\*Such conduct interferes with your work or creates an uncomfortable working environment.**

*The bottom line is, all AutoZoners should be treated with respect and AutoZone as a company will not tolerate anything less.*

**We want you to know that AutoZone is committed to having a cooperative and harassment-free work environment. AutoZoners who may have been subject to sexual harassment should notify the store Manager at once or report the situation directly to the [Area Advisor] or the [District Manager]. The AutoZoner may also directly contact the Director of Personnel Services or the Equal Employment Manager at Mail Station 8029.**

Any AutoZoner who receives a complaint or becomes aware of a sexual harassment situation, should report the allegation *immediately*. Management action will be taken to investigate each reported allegation thoroughly in as confidential a manner as possible. (Emphasis in original.)

AutoZone provides each new employee with a copy of its sexual harassment policy, as contained in its Employment Manual. In addition to adopting this sexual harassment policy and distributing it to its employees, AutoZone periodically provides training sessions for its managers concerning its sexual harassment policies and AutoZone's guidelines. Don Noble testified in his deposition that over the course of his employment with AutoZone, he attended approximately twenty management meetings which included training or conversations on AutoZone's sexual harassment policies and procedures and the handling of sexual harassment claims.

According to Shaw, Noble began making comments about her physical attributes within her first week of employment with AutoZone. In mid-May 1995, Shaw claims the comments became more explicit with Noble asking her questions about her sex

life, including inquiries about whether Shaw masturbated. Noble discussed pornographic movies and suggested ways for her to have better sex with her husband. Shaw also testified that Noble had told her that he had told Wroy Kizer, another store manager, that Shaw and another female employee were part of his "harem." Shaw stated that Noble continued to make sexual comments until she quit on June 6, 1995.

In her deposition, Shaw testified that she quit for "[a] lot of different reasons," "my uncomfortableness about being around Don," as well as "the lack of support from Don as a manager, letting the employees take advantage of me or not support[ing] me." Shaw also stated in her deposition that she quit because she was scheduled to have the day off on Thursday and "they were going to make me give up my Thursday off and Don would not close the store . . . ." She quit by throwing her keys at Noble and telling him with profanity what he could do with them.

While working at AutoZone, Shaw did not report Noble's conduct to anyone nor did she tell Noble to stop making the offensive comments. After Shaw quit, Hunsche, the Area Advisor, attempted to contact Shaw three times to conduct an exit interview, but Shaw did not return his phone calls.[1] Instead, after exhausting her administrative remedies, Shaw filed suit alleging sexual harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–15, against both AutoZone and Noble. Shaw also alleged a claim against Noble for intentional infliction of emotional distress. The parties stipulated to the dismissal of the two claims against Noble individually, leaving only the claim of sexual harassment against AutoZone. AutoZone moved for summary judgment on that claim. On September 19, 1997, the district court granted summary judgment to AutoZone on the basis of our decision in *Jansen v. Packaging Corp. of America*, 123 F.3d 490,

493 (7th Cir.1997) (en banc), which held that in a case of hostile work environment sexual harassment by a supervisor, the standard for the employer's liability is negligence. The district court found that AutoZone was not negligent because it promulgated a sexual harassment policy and because Shaw had failed to notify anyone at AutoZone of Noble's conduct. Shaw filed a timely notice of appeal, but this court stayed briefing pending the Supreme Court's decision in *Ellerth*.

## II. Analysis

This court reviews a grant of summary judgment de novo, drawing all reasonable inferences from the facts in favor of the nonmovant. *See Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir.1998). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "We may affirm on any ground for which there is support in the record." *Parkins*, 163 F.3d at 1032.

In *Ellerth*, the Supreme Court held that employers are strictly liable for a supervisor's sexual harassment of a subordinate, but that employers may avoid that liability by proving an affirmative defense:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that

---

1. Normally, the store manager would conduct the exit interview, but given the circum-

stances of her departure, Hunsche contacted her instead.

the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an anti-harassment policy with complaint procedures is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Ellerth,* 118 S.Ct. at 2270.

It is unclear whether Noble is a "supervisor" as that term is used in *Ellerth,* because AutoZone presented evidence that Noble lacked the authority to hire, fire or promote employees. *See Parkins,* 163 F.3d at 1034 ("[T]he essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes of imputing liability to the employer."). However, we need not decide that issue because, for purposes of summary judgment, AutoZone does not contest Noble's status as a "supervisor." Instead, AutoZone asserts that it is entitled to summary judgment based on the *Ellerth* affirmative defense.

■ Because Shaw did not suffer any tangible employment action, AutoZone may assert the *Ellerth* affirmative defense. To avoid liability AutoZone must first prove that it exercised "reasonable care to

prevent and correct promptly any sexually harassing behavior...." *Ellerth,* 118 S.Ct. at 2270. While not required as a matter of law, *id.,* the existence of an appropriate anti-harassment policy will often satisfy this first prong, *see Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969, 971 (5th Cir.1999), because "'Title VII is designed to encourage the creation of anti-harassment policies and effective grievance mechanisms.'" *Parkins,* 163 F.3d at 1037 (quoting *Ellerth,* 118 S.Ct. at 2270).

■ In this case, AutoZone adopted an antiharassment policy which it distributed to each of its employees. While Shaw testified in her deposition that she had never seen AutoZone's sexual harassment policy, that is irrelevant because it is undisputed that she received a copy of the policy and that she was required as a condition of her employment to read and comply with both the policy and the other terms contained in the Employee Handbook. She even signed an acknowledgment form stating "I understand it is my responsibility to read and learn the policies and procedures contained in the AutoZone Handbook and Safety Booklet." Under these circumstances, even if Shaw did not have actual knowledge of the policy, she had constructive knowledge of the anti-harassment policy. *Cf. Betaco, Inc. v. Cessna Aircraft Co.,* 32 F.3d 1126, 1136 (7th Cir.1994) ("As a result of [the duty to read the contract] a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms."); *24 Hour Fitness, Inc. v. Superior Court of Sonoma County,* 66 Cal.App.4th 1199, 78 Cal.Rptr.2d 533 (1998) (employee bound by terms of handbook where she signed a form acknowledging she received and read the handbook, even though she now claims she did not read the handbook).

This anti-harassment policy made clear AutoZone's stand that sexual harassment will not be tolerated, and provided for multiple mechanisms for the prompt reso-

lution of complaints. It is both specific and detailed, and it allows the "complainant to circumvent the supervisory chain of command." *Jansen,* 123 F.3d at 498 (Flaum, J., concurring). "Rather than criticize, we should encourage any employer who constructs multiple mechanisms for detecting and correcting harassment." *Parkins,* 163 F.3d at 1037. In addition to distributing this policy to its employees, AutoZone regularly conducted training sessions on sexual harassment.

■ These undisputed facts establish, as a matter of law, that AutoZone exercised reasonable care to prevent sexual harassment, especially when contrasted with *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the companion case to *Ellerth,* in which the Supreme Court held that the employer failed to exercise reasonable care to prevent sexual harassment because it failed to disseminate its policy against sexual harassment and because the supervisors were "completely isolated from the City's higher management." *Id.* at 2293. *See also, Rubidoux v. Colorado Mental Health Inst.,* 173 F.3d 1291 (10th Cir.1999) (noting that in *Faragher* the Court emphasized "the degree of hostility and unchecked authority as well as plaintiff's 'complete isolation' from the City's higher management which rose to an actionable level"). Conversely, in this case not only did AutoZone distribute its sexual harassment policy to every one of its employees, it also regularly trained its managers regarding its policy. Moreover, AutoZone's supervisors, such as Noble, were not isolated from higher management. Rather, Noble's immediate supervisor, Hunsche, visited the store approximately every two to three weeks to discuss various issues, and during these visits Shaw could have spoken with him about any problems and he could observe first-hand any issues, in-

cluding any sexual harassment. Shaw also attended a manager's meeting with the District Manager Steve Lang and all other managers in the area in March 1995 and could have used this opportunity to inform AutoZone of the problems. Shaw also had the opportunity to speak with Lang and a regional vice president in mid-May 1995 when they visited the Rock Falls store for the day. Taking the facts in the light most favorable to Shaw, the policy did not succeed in this case, but the law does not require success—it only requires that an employer act reasonably to prevent sexual harassment. *See Parkins,* 163 F.3d at 1036 ("[T]he law does not even require that the employer's actions prevent harassment, but merely that its response was reasonably likely to prevent future harassment."). The facts of this case are more than enough to establish that, as a matter of law, AutoZone exercised reasonable care to prevent sexual harassment. *See Scrivner,* 169 F.3d at 971 (affirming grant of summary judgment to employer based on *Ellerth* affirmative defense, where the employer adopted an anti-harassment policy). *See also Parkins,* 163 F.3d at 1035–1036 (holding that employer exercised reasonable care to prevent sexual harassment where it adopted a policy prohibiting sexual harassment which provided multiple complaint mechanisms).[2]

■ The first prong of the *Ellerth* affirmative defense also requires AutoZone to prove that it exercised reasonable care to respond to the sexual harassment. Shaw, however, never complained of the alleged harassment. Because Shaw never informed AutoZone of Noble's alleged harassment and because it had no reason to know of the harassment, there was nothing for AutoZone to respond to. Under these circumstances, AutoZone's response (to do nothing be-

---

2. In *Parkins,* we held that the harassers were not supervisors. Accordingly, we applied the standard for co-worker harassment, as opposed to the supervisory liability standard. However, the reasonableness of the employ-

er's actions in preventing and responding to sexual harassment is relevant under both standards, the difference being who bears the burden of proof. *Wilson v. Tulsa Junior College,* 164 F.3d 534, 541 (10th Cir.1998).

yond its reasonable attempts to prevent sexual harassment) was reasonable.[3] Because AutoZone has presented undisputed evidence establishing that it acted reasonably to prevent and to respond to sexual harassment, it has satisfied the first prong of *Ellerth*'s affirmative defense.

■ To succeed on the affirmative defense, AutoZone must also establish that Shaw "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 118 S.Ct. at 2270. The undisputed facts establish that AutoZone adopted a sexual harassment policy which established multiple methods for an employee to complain of sexual harassment. Shaw failed to take advantage of any of these mechanisms. Shaw concedes that she never alerted anyone at AutoZone to Noble's inappropriate activities. She did not even tell Noble to stop making the offensive comments. She also ignored AutoZone's three attempts to determine what caused her to quit her job. As we have often said, " 'the law against sexual harassment is not self-enforcing' and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Parkins*, 163 F.3d at 1038 (quoting *Perry*, 126 F.3d 1010, 1014). In short, Shaw acted in precisely the manner that a victim of sexual harassment should *not* act in order to win recovery under the new law. *See also Scrivner*, 169 F.3d at 971 (holding that plaintiff failed to reasonably avail herself of the employer's preventive and correc-

tive sexual harassment policies when she never complained about the harasser's increasingly offensive behavior).

■ Shaw argues in response that it was reasonable for her not to follow AutoZone's complaint mechanism because "she didn't feel comfortable enough with anyone at AutoZone to speak with them about the offensive and repulsive sexual conduct displayed towards her by Noble." [4] While a victim of sexual harassment may legitimately feel uncomfortable discussing the harassment with an employer, that inevitable unpleasantness cannot excuse the employee from using the company's complaint mechanisms. Accordingly, we conclude that an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment. Shaw's failure to do so here satisfies AutoZone's burden under the second prong of the *Ellerth* affirmative defense. *See Ellerth*, 118 S.Ct. at 2270 (a demonstration of an unreasonable failure to use any complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense").

■ In closing, we note that while some cases which were decided pre-*Ellerth* might require remand, *see, e.g., Rubidoux*, 173 F.3d 1291; *Burrell v. Star Nursery, Inc.*, 170 F.3d 951 (9th Cir.1999); *Wilson v. City of Plano*, 164 F.3d 900 (5th Cir. 1999), this case can be decided on the present record because the undisputed

---

**3.** Shaw argues that AutoZone unreasonably responded to the sexual harassment because Wroy Kizer did not engage in any preventive or corrective measures in response to Noble's comment to him that Shaw was part of his harem. According to Shaw, Noble made this comment when "[t]he other managers were saying things that he had two females on his staff which in AutoZone is unusual and that they were saying stuff about that, so he retorted by saying, 'Yeah, I've got a harem,' or something in that regard." Even assuming that Noble made this comment—something

both Kizer and Noble dispute—this stray remark was too innocuous to cause a reasonable person to believe that Noble was sexually harassing Shaw such that some sort of corporate response was necessary.

**4.** Shaw also seems to argue that it was reasonable for her not to have used the complaint mechanism because she had never seen AutoZone's sexual harassment policy. However, as we have already held, Shaw had constructive notice of this policy. *See supra* at 811–12.

facts which we rely upon above were fully developed in discovery. Specifically, Shaw's attorney questioned AutoZone extensively about its sexual harassment policy and its training and response to sexual harassment complaints, and AutoZone questioned Shaw at length about witnesses to the harassment and about whether and to whom she had complained. Moreover, in this case the parties had originally briefed the summary judgment motion based on the question of supervisory liability, although the district court did not apply that law, instead relying on our decision in *Jansen*. Thus, while the standard for liability has changed, the record and arguments were fully developed for application of the new standard. Therefore, remand is unnecessary.[5] *See, e.g., Scrivner*, 169 F.3d 969 (applying the *Ellerth/Faragher* affirmative defense on appeal and affirming summary judgment based on the complete record presented to the district court).

AFFIRMED.

---

**5.** In fact, in *Faragher* the Supreme Court applied the new affirmative defense standard to the facts as previously developed by the parties at the summary judgment stage.