Diana L. **HOOKER**, and Leslie
R. Hooker, husband and
wife, Plaintiffs,

v.

James **WENTZ**, individually, James Wentz, as the agent, servant, and/or employee of United Parcel Services, United Parcel Services, Inc., a New York corporation doing business in West Virginia, Jane Doe, and John Doe, Defendants.

No. Civ.A. 2:99–0113.

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 20, 1999.

Thomas G. Wilson, Charleston, WV, for Plaintiffs.

Niall A. Paul, Charleston, WV, Scott F. Zimmerman, Stephen J. Del Sole, David J. McAllister, Pittsburgh, PA, Josef A. Horter, Charleston, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending before the Court are the defendants' motions for summary judgment. For reasons set forth more fully herein, the Court finds that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. Accordingly, the Court **GRANTS** the defendants' motions for summary judgment.

### I.

This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Diana Hooker, an employee of the United Parcel Service, Inc. (UPS), alleges that James Wentz, her former supervisor at UPS, sexually harassed her. Specifically, Hooker claims that since becoming "Center Manager" of the UPS facility in Logan County, West Virginia, Wentz has subjected her to crude, vulgar, and unwelcome remarks of an offensive sexual nature. She further alleges that Wentz consistently subjected her to

unwelcome sexual touching, including rubbing his genitals against her and touching her inner thighs in a sexually suggestive manner. Hooker also maintains that Wentz has on more than one occasion requested sexual favors from her and has taken adverse employment action against her when she failed to submit to his advances. She contends that the combination of these actions created a hostile working environment that UPS failed to alleviate. The defendants deny Hooker's allegations.

## II.

Wentz and UPS have both filed motions for summary judgment. Wentz argues that he is entitled to summary judgment because as a supervisor, he is not liable in his individual capacity for Title VII violations. UPS argues that it is entitled to summary judgment on the basis of an affirmative defense outlined in two recent Supreme Court decisions. The affirmative defense protects an employer from vicarious liability to an employee for a hostile environment created by a supervisor.

Hooker's only response is that the motions are moot because they are founded on the false or perjured testimony of Wentz and Donna Cook, another UPS employee. This argument was prompted by Cook's recent affidavit in which she admitted to giving false deposition testimony concerning her workplace affair with Wentz. *See* Pl.Mem. in Opp. to Def.Mot. For Summ.J.Ex. 6. Cook admits that she had in fact been involved in a personal relationship with Wentz. *Id.* Further, Wentz recently recanted his prior deposition testimony in which he stated that he had never had a romantic or sexual relationship with a UPS employee. Wentz now admits to having engaged in sexual relationships with several employees. Pl. Rule 56(f) Mot.Ex. 2 at 5, 11, 12, 14. Hooker asserts that these recent admissions confirm Hooker's allegations and render moot the defendants' motions for summary judgment.

## III.

Pursuant to Rule 56 of the *Federal Rules of Civil Procedure,* a party moving for summary judgment must demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. When considering a summary judgment motion, the district court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Moreover, the Court must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden of proving. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). While the Court must view the facts and inferences in the light most favorable to the nonmoving party, a party opposing summary judgment must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor" or other "significant probative evidence tending to support the complaint." *Anderson,* 106 S.Ct. at 2514 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). The nonmoving party must satisfy this burden by offering more than a mere "scintilla of evidence" in support of its position. *Anderson,* 106 S.Ct. at 2512. "[I]f the evidence is 'merely colorable' or 'not significantly probative,' a motion for summary judgment may be granted." *Sylvia Dev. Corp. v. Calvert County,* 48 F.3d 810, 818

(4th Cir.1995) (quoting *Anderson*, 106 S.Ct. at 2511).

**A.**

▮ Wentz argues that Hooker cannot hold him personally liable for a violation of Title VII and that he is therefore entitled to summary judgment. The Fourth Circuit has expressly held that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Svc., Inc.*, 159 F.3d 177, 181 (4th Cir.1998); *see Baird v. Rose*, 192 F.3d 462, 472 (4th Cir.1999) (stating that "Title VII does not provide a remedy against individual defendants who do not qualify as 'employers' "). The Fourth Circuit in *Lissau* based its conclusion on the language of Title VII and the "fact that its remedial scheme seems so plainly tied to employer, rather than individual, liability." *Lissau*, 159 F.3d at 181.

Cook's and Wentz's disregard for the truth and their prior workplace sexual relationships do not alter the application of Fourth Circuit law to this case. Hooker's argument that Wentz's motion for summary judgment is moot is without merit. The Court **GRANTS** Wentz's motion for summary judgment.

**B.**

▮ UPS argues that it is entitled to summary judgment on the basis of an affirmative defense set forth in two recent Supreme Court decisions. If applied to this case, the affirmative defense would protect UPS from vicarious liability to Hooker for the hostile environment allegedly created by Wentz. The defense applies only if no tangible employment action is taken against the plaintiff and if the following two prongs are met: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998); *Bur-*

*lington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); *see Brown v. Perry*, 184 F.3d 388, 395 (4th Cir.1999); *Reinhold v. Commonwealth of Virginia*, 151 F.3d 172, 175 (4th Cir.1998).

**1.**

Application of the affirmative defense in this case first hinges on a finding that Wentz's harassment did not culminate in a tangible employment action against Hooker. *See Faragher*, 118 S.Ct. at 2293. Hooker states that UPS engaged in the following adverse employment action against her: 1) Wentz restricted the number of hours she could work; 2) she was not placed into an open position; and 3) Wentz sent her a "72–hour" letter. UPS's Mot. For Summ.J.Ex. A at 63, 87.

▮ Regarding the reduction in her hours, Hooker claims that she was instructed to work no more than four hours per day during the period right before Christmas 1998. *Id.* at 63. Hooker does not contest the following facts concerning the reduction of her hours, and the facts are therefore undisputed. The reduction of Hooker's hours occurred during a time when UPS was experiencing package volume decline in the wake of a union strike and found it necessary to reduce clerical hours. *Id.* Ex. C ¶ 36. The reduction in hours was prompted by the company-wide initiative to decrease clerical hours. *Id.* Further, Hooker admits that the other employee engaged in her line of work was also instructed not to work over four hours. *Id.* Ex. A at 63. Any reduction in Hooker's hours was therefore not the culmination of Wentz's sexual harassment.

▮ Although UPS did not provide Hooker a part-time supervisory position, it is undisputed that Hooker never submitted a Letter of Intent, which is required from an employee who wishes to be considered for an entry level management position. *Id.* Ex. C ¶¶ 34–35. It is also undisputed that Susie Dameron, rather than Wentz,

was the supervisor who refused to consider Hooker for the job and that her decision was not related to the alleged sexual harassment by Wentz. *Id.* Ex. A at 76. UPS's refusal to promote Hooker to a part-time supervisory position was therefore not a culmination of Wentz's sexual harassment.

█ When a non-exempt employee has failed to report to work and has not been in communication with UPS, the employee receives a "72–Hour Letter." *Id.* Ex. C ¶ 37. Such a letter requires the employee to report to UPS within 72 hours after the start of the employee's last scheduled workday. *Id.* Although Hooker received a "72–Hour Letter" signed by Wentz, she admitted in her deposition that it was made in error and later withdrawn. *Id.* Ex. A at 87–88. Mere receipt of the letter did not constitute a tangible employment action because it did not result in a significant change in employment status, such as hiring, firing, or reassignment. *See Burlington Indus.*, 118 S.Ct. at 2268 (stating that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *Reinhold,* 151 F.3d at 175.

The Court finds that Wentz's sexual harassment did not culminate in a tangible employment action on the part of UPS against Hooker. It is therefore necessary for the Court to consider whether "(a) [UPS] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) [Hooker] unreasonably failed to take advantage of any preventive or corrective opportunities provided by [UPS] or to avoid harm otherwise." *Faragher,* 118 S.Ct. at 2293; *Burlington Indus.,* 118 S.Ct. at 2270; *see Brown,* 184 F.3d at 395; *Reinhold,* 151 F.3d at 175.

### 2.

█ Regarding UPS's duty to exercise reasonable care to prevent and correct sexually harassing behavior, evidence that UPS has "disseminated an effective anti-harassment policy provides compelling proof of its efforts to prevent workplace harassment." *Lissau,* 159 F.3d at 182. It is undisputed that UPS had a sexual harassment policy in effect during the time that Hooker was employed by UPS under Wentz's supervision. UPS's Mot. For Summ.J.Ex. C ¶ 6. The policy is contained in UPS's Policy Book and, as Hooker concedes, is posted in employee work or break areas at all UPS facilities. *Id.* ¶¶ 7–8; *id.* Ex. A. at 11–12. UPS has prepared a "Statement of Policy on Sexual Harassment" that quotes the Policy and instructs employees how to report complaints. *Id.* Ex. C ¶ 8.

In addition to issuing the Policy, UPS provides formal sexual harassment training to managers; Wentz has attended this training. *Id.* ¶¶ 11, 13. UPS also provides its managers with a guide that discusses UPS's sexual harassment policy. *Id.* ¶ 14. To further encourage reports of sexual harassment, UPS provides its employees a toll-free number that they may call when they have been subject to such harassment. *Id.* ¶ 16. Hooker does not refute any of these assertions. There is therefore no genuine dispute that UPS had an effective policy and complaint procedure in place to prevent sexual harassment.

Further, it is undisputed that UPS acted promptly to address any alleged improper behavior by Wentz. UPS first learned of Hooker's allegations upon receiving the original complaint filed in this action, and it immediately placed Wentz on paid leave pending an investigation. *Id.* ¶¶ 25–26. UPS then transferred Wentz to another facility so that Hooker would no longer be under Wentz's general supervision. *Id.* ¶ 29.

Prior to the filing of her original complaint in this action, Hooker spoke to her part-time supervisor, Patrick Bryant, about certain comments Wentz made to her. Hooker asked Bryant to keep their conversations private and did not ask him to report it to higher authorities. *Id.* Ex.

A at 24–27. In maintaining Hooker's confidence, Bryant did not breach his duty to remedy the harassment. *See Torres v. Pisano*, 116 F.3d 625, 639 (2d Cir.1997) (finding that supervisor who kept employee's complaints confidential did not breach his duty to remedy sexual harassment). Hooker's conversations with Bryant revealed only two instances in which Wentz allegedly called Hooker and asked her to "play" or meet him at a hotel. UPS's Mot. For Summ.J.Ex. A at 25. Hooker did not reveal to Bryant any of Wentz's other actions of which she now complains. *See Torres*, 116 F.3d at 639 (noting that plaintiff recounted to supervisor only a few relatively minor incidents of harassment rather than revealing full extent of abuse alleged in lawsuit). There is no evidence that Bryant was aware that Wentz was harassing any other employee. *See id.* (noting that if supervisor is harassing number of employees and one employee asks the company not to take action, the employer's duty to the other employees would then take precedence over honoring the single employee's request).

Given these factors, the law will not presume that persons protected by Title VII cannot make reasonable decisions for themselves about how best to proceed with their harassment claims. *See id.* Bryant therefore did not act unreasonably in failing to report Hooker's allegations to higher authorities, and UPS is not accountable for not addressing the problem until Hooker filed her original complaint in January 1999. The Court therefore finds that UPS "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Faragher*, 118 S.Ct. at 2293; *Burlington Indus.*, 118 S.Ct. at 2270; *see Brown*, 184 F.3d at 395; *Reinhold*, 151 F.3d at 175.

The Court also finds that Hooker "unreasonably failed to take advantage of any preventive or corrective opportunities provided by [UPS] or to avoid harm otherwise." *Faragher*, 118 S.Ct. at 2293; *Burlington Indus.*, 118 S.Ct. at 2270; *see Brown*, 184 F.3d at 395; *Reinhold*, 151

F.3d at 175. It is undisputed that Hooker was aware of UPS's sexual harassment policy and the procedure for filing grievances or complaints. UPS's Mot. For Summ.J.Ex. A. at 11–12. Hooker repeatedly admits in her deposition, however, that she failed to complain to UPS about Wentz's acts of harassment. *Id.* at 23–24, 27, 30, 55, 57. Other than her conversations with Bryant, Hooker did not speak with any other supervisors about the alleged harassment. *Id.* at 27, 62. It is therefore undisputed that Hooker failed to take advantage of UPS's sexual harassment policy and complaint procedures.

Hooker states in her deposition that she did not ask Bryant to report the harassment to higher authorities because Wentz has a bad temper and she feared losing her job. *Id.* at 26. A plaintiff's subjective fears of confrontation or retaliation do not, however, alleviate the duty to take advantage of an effective anti-discrimination complaint procedure provided by the employer. *See Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir.1999). Allowing Hooker to circumvent the reasonable complaint requirements would eviscerate the affirmative defense crafted by the Supreme Court. *Fierro v. Saks Fifth Avenue*, 13 F.Supp.2d 481, 492 (S.D.N.Y.1998).

In addition to failing to take advantage of UPS's complaint procedures, Hooker failed to take other measures to avoid harm. She did not file a grievance with her union although a grievance procedure was available. UPS's Mot. For Summ. J.Ex. A. at 30. She states in her deposition that although she told her union steward about the harassment, she did not ask him to approach higher authorities or to take any other remedial measures. *Id.* It is therefore undisputed that Hooker failed to take appropriate measures to prevent further harassment by Wentz.

In conclusion, the undisputed evidence, including the plaintiff's own deposition testimony, demonstrates that there is no genuine issue of material fact. Hooker was aware of UPS's sexual harassment policy

and the complaint procedure, yet failed to take advantage of it. UPS, on the other hand, took appropriate measures both to prevent and to address sexual harassment by its supervisors. The Court therefore finds the affirmative defense applicable in this case.

Rather than dispute the application of the affirmative defense, once again Hooker claims that UPS's motion for summary judgment is moot based on the perjured testimony of Cook and Wentz. This Court finds, however, that Cook's and Wentz's disregard for the truth and their inappropriate workplace sexual relationships do not alter the application of the affirmative defense to this case. Accordingly, the Court **GRANTS** UPS's motion for summary judgment.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.