**Tammy L. MILLER, and Russell W. Miller, individually and as guardians for Dustan Gauley, Katie Gauley, Tabitha Miller, Nicholas Miller, and Brittany Miller, Plaintiffs,**

v.

**WOODHARBOR MOLDING & MILL-WORKS, INC., Todd Piper, Curtis Lewerke, and Jon Lewerke, Defendants.**

No. C95–3079–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Jan. 18, 2000.

Thomas J. Duff, Roxanne Conlin & Assoc., Des Moines, IA, for plaintiffs.

Michael G. Byrne, Winston & Byrne, Mason City, IA, for defendants.

## DECISION UPON REMAND

BENNETT, Chief Judge.

### I. INTRODUCTION

On October 2, 1995, plaintiffs Tammy L. Miller ("Miller") and Russell W. Miller brought, *inter alia,* a hostile work environment sexual harassment action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* against Tammy Miller's former employer, defendant Woodharbor Molding & Millworks, Inc. ("Woodharbor"), and certain officers and employees of Woodharbor, namely, Todd Piper, Curtis Lewerke, and Jon Lewerke. On December 17, 1997, following a bench trial, the undersigned found that Tammy Miller was subjected to a sexually hostile work environment as a result of Todd Piper's repeated sexually derogatory remarks, and entered judgment for plaintiff Miller. Thereafter, defendant Woodharbor appealed, and on April 28, 1999, the Eighth Circuit Court of Appeals reversed this court's judgment, and remanded it to provide Woodharbor the opportunity to present an affirmative defense to Miller's hostile work environment claim in light of *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), notwithstanding the fact that Woodharbor never raised this affirmative defense at trial. *Miller v. Woodharbor Molding & Millworks,* 174 F.3d 948, 948 (1999). The court notes that both Supreme Court cases were decided approximately six months after this court rendered its decision.

The court held a hearing on September 3, 1999, for the sole purpose of permitting Woodharbor the opportunity to present evidence concerning the two-prong affirmative defense to Miller's hostile work environment claim. Plaintiffs were repre-

sented by Thomas J. Duff of Roxanne Conlin & Associates, Des Moines, Iowa. Defendants were represented by Michael G. Byrne of Winston & Byrne, Mason City, Iowa.

## II. LEGAL ANALYSIS

In June of 1998, the United States Supreme Court handed down two decisions that dramatically altered the landscape of sexual harassment claims premised on the conduct of supervisory employees. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In *Faragher* and *Ellerth*, the Court set forth the following standard to be applied in determining whether a supervisor's harassing conduct subjects an employer to liability for a hostile work environment claim under Title VII:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* FED. R.CIV.P. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. 775, 118 S.Ct. at 2292–93; *Ellerth*, 524 U.S. 742, 118 S.Ct. at 2270. Under this new standard, the analysis for sexual harassment claims against employers for the conduct of their supervisory employees proceeds as follows. The threshold question that must be answered is whether the plaintiff-employee suffered a tangible employment action. *See id.* If a supervisor's alleged sexual harassment of an employee culminates in "a tangible employment action such as discharge, demotion, or undesirable reassignment, the

employer is vicariously liable to the employee." *Newton v. Cadwell Lab.*, 156 F.3d 880, 883 (8th Cir.1998) (citing *Faragher* and *Ellerth*). If no tangible employment action is taken, the analysis shifts to a consideration of whether the plaintiff-employee has set forth an actionable claim for hostile work environment. *See Faragher*, 524 U.S. 775, 118 S.Ct. at 2292–93; *Ellerth*, 524 U.S. 742, 118 S.Ct. at 2270. Provided the plaintiff-employee can establish an actionable claim for hostile work environment, the employer will be vicariously liable for the supervisor's harassing conduct unless the employer can prove by a preponderance of the evidence that (1) it exercised reasonable care to prevent and promptly correct the harassing behavior and (2) that the complaining employee unreasonably failed to take advantage of available preventive or corrective opportunities or otherwise avoid harm. *Newton*, 156 F.3d at 883 (citing *Faragher* and *Ellerth*); *see also Sims v. Health Midwest Physician Servs. Corp.*, 196 F.3d 915, 920 (8th Cir.1999) (citing same cases); *Todd v. Ortho Biotech, Inc.*, 175 F.3d 595, 597 (8th Cir.1999) (citing same); *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 889 (8th Cir.1998) (citing same).

The record is undisputed that Todd Piper was Tammy Miller's supervisor, and that Miller did not suffer any tangible employment action. Accordingly, the principles of employer liability set forth in *Ellerth/Faragher* apply to this case.

### A. First Prong: Did Woodharbor Exercise Reasonable Care To Prevent And Promptly Correct The Sexual Harassment?

To establish the first prong of the affirmative defense, Woodharbor must prove that "it exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *See Phillips*, 156 F.3d at 889; *see also Ellerth*, 524 U.S. 742, 118 S.Ct. at 2270; *Faragher*, 524 U.S. 775, 118 S.Ct. at 2293. The primary purpose of Title VII is not to provide redress; rather,

it is to prevent discrimination and the harm that results from such acts. *See Faragher,* 524 U.S. 775, 118 S.Ct. at 2292 (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). While not required as a matter of law, *see Ellerth,* 524 U.S. 742, 118 S.Ct. at 2270, the existence of an appropriate anti-harassment policy will often satisfy this first prong, *see Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969, 971 (5th Cir.1999), because " 'Title VII is designed to encourage the creation of anti-harassment policies and effective grievance mechanisms.' " *Shaw v. AutoZone, Inc.,* 180 F.3d 806, 811 (7th Cir.1999) (quoting *Ellerth,* 524 U.S. 742, 118 S.Ct. at 2270); *Green v. The Servicemaster Co.,* 66 F.Supp.2d 1003, 1012 (N.D.Iowa 1999). However, the Third Circuit Court of Appeals advised that *"Ellerth* and *Faragher* do not, as the defendants seem to assume, focus mechanically on the formal existence of a sexual harassment policy, allowing an absolute defense to a hostile work environment claim whenever the employer can point to an anti-harassment policy of some sort." *Hurley v. Atlantic City Police Dept.,* 174 F.3d 95, 118 (3rd Cir.1999).

Indeed, a number of decisions indicate that in order for an employer to satisfy the duty of reasonable care to prevent harassment, the employer's harassment-prevention policy must be "effective." *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 182–83 (4th Cir.1998); *Reinhold v. Commonwealth of Virginia,* 151 F.3d 172, 176 (4th Cir.1998) ("complaint procedures must be effective"). Courts have explained that the gravamen of an "effective" anti-harassment policy includes: 1) training for its supervisors regarding sexual harassment, *see Shaw v. AutoZone, Inc.,* 180 F.3d 806, 812 (7th Cir.1999) (explaining that the company's anti-harassment policy at issue was effective because it was distributed to

every one of its employees, and it also regularly trained its managers regarding its policy); *Baty v. Willamette Indus., Inc.,* 172 F.3d 1232, 1242 (10th Cir.1999) (explaining that the small amount of training given the employees was inadequate in light of the severity of the problem); *see also Hollis v. City of Buffalo,* 28 F.Supp.2d 812, 821 (W.D.N.Y.1998): *Miller v. D.F. Zee's, Inc.,* 31 F.Supp.2d 792, 803 (D.Or. 1998); 2) an express anti-retaliation provision,[1] *see Montero v. AGCO Corp.,* 192 F.3d 856, 861–862 (9th Cir.1999) (finding that anti-harassment policy at issue to be effective because it contained, *inter alia,* an anti-retaliation provision); *Duran v. Flagstar Corp.,* 17 F.Supp.2d 1195, 1203 (D.Colo.1998); *Pritchard v. Earthgrains Baking Cos., Inc.,* 1999 WL 397910, *9 (W.D.Va. March 5, 1999); and, 3) multiple complaint channels for reporting the harassing conduct. *See Shaw,* 180 F.3d at 811–12 (finding that the anti-harassment policy to be effective because it provided, *inter alia,* for multiple mechanisms for the prompt resolution of complaints); *Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1035–36 (7th Cir.1998) (holding that employer exercised reasonable care to prevent sexual harassment where it adopted a policy prohibiting sexual harassment which provided multiple complaint mechanisms); *Young v. Bayer Corp.,* 123 F.3d 672, 675 (7th Cir.1997) (the employer had four authorized channels for lodging complaints); *Duran,* 17 F.Supp.2d at 1203 (stating that the first prong of the affirmative defense satisfied because employee handbook contained, *inter alia,* various channels through which to render a complaint, and provided a 1–800 number); *Pritchard,* 1999 WL 397910, *9 (citing same).

■ In this case, Woodharbor maintained an Employee Handbook that it distributed to all its employees. Included in

---

1. The EEOC enforcement guidelines specifically state: "An employer should make clear that it will not tolerate adverse treatment of employees because they report harassment or provide information related to such complaints. An anti-harassment policy and complaint procedure will not be effective without such assurance." *Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors,* EEOC Notice No. 915.002 (June 18, 1999).

this handbook is a section entitled "Sexual Harassment Policy," which provides:

> Employees in positions of authority need to be sensitive to the potential for conflicts on interest in personal relationships with subordinate employees. When significant disparities in age or authority are present between two individuals, questions about professional responsibility and the mutuality of consent to personal relationship may well arise. Sexual harassment can also take place between peers. Anytime questionable behavior takes place, it should be reported. Sexual harassment takes many forms; for example: repeated and unwanted staring; comments or propositions of a sexual nature; subtle pressure for sexual activity; sexist remarks about a person's clothing, body or sexual activity; unnecessary touching, patting, hugging or brushing against a person's body; direct or implied threats that submission to sexual advances will be a condition of employment, work status or letters of recommendation; physical assaults.
>
> Woodharbor Molding & Millworks, Inc. will not tolerate sexual harassment in the workplace. Therefore, employees are strongly encouraged to report any complaints of sexual harassment. All such complaints will be handled with confidentiality and promptly investigated by our Human Resources staff. Persons found to be engaging in unwelcome sexual conduct will be subject to appropriate disciplinary action, including possible discharge, based on the circumstances.

Woodharbor Employee Handbook at 13. It is undisputed that throughout Miller's employment with Woodharbor, Woodharbor had an anti-harassment policy in place, and that Miller herself was aware of this policy. However, the same cannot be said of Woodharbor's supervisors, namely, Richard Lewerke. At the hearing, Richard Lewerke was asked whether he was aware of Woodharbor's sexual harassment policy to which he replied, "No, I wasn't. I don't remember when we got the handbooks for sure, but no I wasn't." Tr. 49. Mr. Lewerke also testified that he never received any training or instruction on how to identify sexual harassment, the procedure he was expected to follow if he observed sexually harassing behavior, or the procedure he was expected to follow if one of his employees reported sexually harassing behavior to him. Tr. 47. Also, Todd Piper testified that "[he] thought [he] had a copy of [the written policies of the corporation or the handbook] in [his] desk to refer to it if any circumstances arose," Tr. 28, and that he "thought" that the person to whom he was required to report any allegation of sexual harassment was Lowell Butler. Tr. 29. Therefore, although Woodharbor adopted an anti-harassment policy, Woodharbor failed to ensure that its supervisors not only possessed its sexual harassment policy, but that they were familiar with it. Moreover, Woodharbor failed to provide training for its supervisors about sexual harassment, and likewise failed to inform its supervisors about the company's procedure for reporting sexual harassment.

In addition, the Woodharbor anti-harassment policy contains no express anti-retaliation language or provision of any kind. When questioned about this, Woodharbor's president, Curtis Lewerke, testified that he believed that in the last paragraph of the policy, the company clearly sets forth that employees who report sexual harassment will not be retaliated against. The exact provision that Curtis Lewerke refers provides that, "all such complaints will be handled with confidentiality and promptly investigated by our Human Resources staff." The court finds that this provision is woefully inadequate, because it fails to include any language that the employee will not encounter retaliation, or punishment for reporting the sexual harassment. Cf. Montero, 192 F.3d at 862 (the policy provides that "no reprisals against the employee reporting the allegation of sexual harassment will be tolerated").

Furthermore, Woodharbor's anti-harassment policy has no formal complaint procedure, and fails to provide any avenue for employees to report the sexual harassment. The policy categorically states that employees "are strongly encouraged to report any complaints of sexual harassment," but neglects to indicate to whom employees are expected to report the harassment. Woodharbor argues that Miller was familiar with the complaint procedure, having been disciplined for her own inappropriate language, as well as reporting objectionable conduct about one of her co-employees, Brian Schroeder. However, these previous complaints involving Miller are dissimilar to the sexually harassing behavior presently at issue. The court concluded that Miller was sexually harassed by Todd Piper, a supervisor at Woodharbor. Mr. Piper's supervisory position is of significant import, because unlike Mr. Schroeder's status as Miller's co-employee, Todd Piper was Miller's direct supervisor. Mr. Piper's position in the company, coupled with Woodharbor's generic and ill-defined anti-harassment policy, contributed to Miller's failure to report Piper's conduct. *Cf. Jansen v. Packaging Corp. of America,* 123 F.3d 490, 493 (7th Cir.1997) (holding that the policy was specific and detailed, which "allows the complainant to circumvent the supervisory chain of command"); *see also Duran,* 17 F.Supp.2d at 1203 (policy permitted reporting sexual harassment through various channels including 1–800 number). The policy's failure to articulate an alternative complaint procedure for reporting the conduct of supervisors, and lack of express and firm language stating that reporting such conduct will not result in retaliation, expose the flaws of Woodharbor's anti-harassment policy, and ultimately, its ineffectiveness.

The Supreme Court in *Faragher* concluded that because of the inadequacies of the employer's policies and procedures concerning sexual harassment, the employer, as a matter of law, did not exercise reasonable care to prevent the supervisor's harassing conduct. *Faragher,* 524 U.S. 775, 118 S.Ct. at 2293. As outlined above, Woodharbor did not train its supervisors about sexual harassment. Its written sexual harassment policy contained no anti-retaliation language, and no detailed and specific complaint procedure for employees to report the sexually harassing conduct. Accordingly, because of the inadequacies of Woodharbor's anti-harassment policy, the court concludes that Woodharbor did not exercise reasonable care to prevent Todd Piper's sexually harassing conduct.

Having concluded that Woodharbor failed to prevent Piper's harassing conduct, the court must next determine whether Woodharbor promptly corrected the sexually harassing behavior. At the hearing, Woodharbor steadfastly maintained that it was not aware of Piper's sexually harassing behavior. This is so despite the undersigned finding that:

> "Woodharbor knew or should have known there was a problem and failed to take remedial action. Rich Lewerke testified that he spoke not only to Piper about the harassing conduct, but also to Woodharbor's personnel director, Lowell Butler. The court finds this testimony credible, and sufficient to satisfy the knew or should have known standard."

Trial Tr. at 23. Woodharbor argues that because Miller herself did not report the conduct, and failed to request Richard Lewerke to complain on her behalf, the company was not aware of the sexually harassing conduct. This argument, however, is without merit. As the Eighth Circuit Court of Appeals explained, "notification of sexual harassment to an employer need not come solely from the victim of the harassment for knowledge to be imputed to the employer." *Sims v. Health Midwest Physician Services Corp.,* 196 F.3d 915, 920 (8th Cir.1999); *see also Young v. Bayer Corp.,* 123 F.3d 672, 675 (7th Cir. 1997) (finding it sufficient for a plaintiff to give notice to someone who should reasonably be expected to stop the harassment or refer the complaint up the chain of command to someone who can stop it); *Williamson v. City of Houston,* 148 F.3d 462,

467 (5th Cir.1998) ("an employer cannot use its own policies to insulate itself from liability by placing an increased burden on a complainant to provide notice beyond that required by law"); *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55 (2d Cir.1998) (holding that, if a direct supervisor who had the responsibility to stop harassment knew of and failed to act against it, the plaintiff has no further obligation to bring it to the employer's attention). Nevertheless, Woodharbor failed to investigate the allegations that Richard Lewerke relayed to Lowell Butler. Todd Piper testified that Lowell Butler never conducted any investigation of sexual harassment concerning himself or anyone else. Moreover, both Jon and Curtis Lewerke testified that Butler was expected to report any sexually harassing conduct that he was investigating, but that Butler never informed them about any investigation concerning Miller. Woodharbor offered no evidence proving that it corrected, much less attempted to correct, the sexually harassing conduct. This undisputed fact that Woodharbor did not correct the sexually harassing conduct is dispositive. Accordingly, Woodharbor fails to establish the first prong of the *Ellerth/Faragher* affirmative defense.

**B. Second Prong: Did Miller Unreasonably Fail To Take Advantage Of Any Preventive Or Corrective Opportunities Provided By Woodharbor Or To Avoid Harm Otherwise?**

To establish the second prong of the affirmative defense, Woodharbor must prove that Miller "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth,* 524 U.S. 742, 118 S.Ct. at 2270. "While proof than an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the

employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.; Faragher,* 524 U.S. 775, 118 S.Ct. at 2293.

■ As already noted, Miller reported Todd Piper's sexually harassing conduct to Richard Lewerke, who was a supervisor at Woodharbor. Woodharbor's anti-harassment policy does not state to whom Miller was expected to report Piper's harassing conduct; rather, it simply states that "employees are strongly encouraged to report any complaints of sexual harassment." The undersigned found that Miller may have been hesitant to complain about Piper's conduct given his position as the plant manager and his close personal relationship with the company owners. Trial Tr. at 23. Although the court appreciates that a fear of reprisal does not alleviate an employee's affirmative obligation to report the sexually harassing conduct, *see Shaw,* 180 F.3d at 813 ("an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer of the allegedly hostile environment"); *Fierro v. Saks Fifth Avenue,* 13 F.Supp.2d 481, 491 (S.D.N.Y.1998) ("generalized fear [of repercussions] can never constitute reasonable grounds for an employee's failure to complain to his or her employer"), the court opines that fear of reprisal does affect to whom an employee reports such conduct. *See Brandrup v. Starkey,* 30 F.Supp.2d 1279, 1289 (D.Or.1998) ("instructing an employee to voice complaints directly to the supervisor that is allegedly responsible for the harassing behavior would not be a reasonable response to an employee's concerns"). Miller reported Piper's conduct to Richard Lewerke, who in turn reported his own observations to Lowell Butler about Piper's conduct towards Miller.[2] The simple fact that

---

**2.** Richard Lewerke testified that he specifically recalled telling Lowell Butler that Todd Piper had made the comment to Tammy Miller about "if you won't suck it, at least play with it." Tr. 54.

Richard Lewerke reported the conduct, as opposed to Miller herself, does not countenance Woodharbor's failure to investigate Piper's conduct. Moreover, under this prong, Woodharbor needs to prove that not only did Miller fail to take advantage of the preventive opportunities that Woodharbor provided, but that she unreasonably failed to take advantage of the preventive opportunities that Woodharbor provided. The court found that Richard Lewerke relayed the sexually harassing conduct to Lowell Butler, who was in charge of investigating sexual harassment at Woodharbor. Yet, Butler never initiated an investigation of Piper's alleged conduct. Thus, because Lowell Butler knew of the sexually harassing conduct and failed to act, Woodharbor has failed to establish the second prong of the affirmative defense. *See Todd v. Ortho Biotech, Inc.*, 175 F.3d 595, 598 (8th Cir.1999) (observing that the defense may provide no protection in a case where "the employer learns that the harassment has occurred and fails to take proper remedial action.").

Furthermore, the court finds that, under the facts and circumstances of this case, Miller's reporting the conduct to Richard Lewerke comports with the *Ellerth/Faragher* rubric. The affirmative defense allows the plaintiff employee to take corrective opportunities provided by the employer "or to avoid harm otherwise." *Ellerth*, 524 U.S. 742, 118 S.Ct. at 2270. Miller reported the sexually harassing conduct to Richard Lewerke, who was both a friend, as well as a supervisor, at the Woodharbor plant. Her hesitancy to directly report Piper's conduct to Lowell Butler falls within this "avoid harm otherwise" language. Therefore, Woodharbor cannot show as a matter of law that it satisfies the second prong of the *Ellerth/Faragher* affirmative defense.

### III. CONCLUSION

The court concludes that Woodharbor failed to prove either prong of the *Ellerth/Faragher* affirmative defense by a preponderance of the evidence. With respect to the first prong, the court concludes that Woodharbor failed to exercise reasonable care to prevent and promptly correct the sexual harassment that Miller endured from Todd Piper. With respect to the second prong, the court concludes that Woodharbor failed to prove that Tammy Miller unreasonably failed to take advantage of Woodharbor's preventive or corrective opportunities. Accordingly, the court enters judgment in favor of plaintiff Tammy L. Miller.

**IT IS SO ORDERED.**